IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WEB SAIGON US LLC and
NGUYEN BA HOANG LONG,

        Plaintiffs,

    v.

U.S. CITIZENSHIP AND IMMIGRATION
SERVICES and DONNA CAMPAGNOLO,
Director, California Service Center,

        Defendants.

No. 3:21-cv-00065-HZ

OPINION & ORDER

Lindsay Hanson
Jamie Langton
FOUR CORNERS IMMIGRATION LAW LLC
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204

    Attorneys for Plaintiffs

1 – OPINION & ORDER

Joshua Samuel Press
Vanessa Molina
U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION
Office of Immigration Litigation
Ben Franklin Station, P.O. Box 868
Washington, DC 20005

    Attorneys for Defendants

HERNÁNDEZ, District Judge:

Plaintiffs Web Saigon US LLC ("Web Saigon") and Nguyen Ba Hoang Long bring this case challenging the decision of Defendants U.S. Citizenship and Immigration Services ("USCIS") and Donna Campagnolo to deny Plaintiffs' L-1B visa petition. Plaintiffs bring their claims under the Administrative Procedure Act, 5 U.S.C. § 701, et seq.; the Mandamus Act, 28 U.S.C. § 1361; and the Declaratory Judgment Act, 28 U.S.C. § 2201(a). The parties filed cross motions for summary judgment on Plaintiffs' claims. For the reasons that follow, the Court grants Defendants' motion and denies Plaintiffs' motion.

## BACKGROUND

Plaintiff Web Saigon petitioned for a temporary work visa for Plaintiff Long, an employee of its Vietnamese affiliate company Web Saigon Co., LTD ("Web Saigon Vietnam"). Organized in 2020, Plaintiff Web Saigon is a relatively new corporation headquartered in Oregon. Compl. ¶ 4. Like its Vietnamese affiliate, Plaintiff Web Saigon provides web development and programming services to e-commerce businesses with its strategic partner Forix, LLC ("Forix"), a digital agency specializing in e-commerce. Plaintiff Web Saigon was created to establish a presence in the United States and bring their web development services closer to Forix. CAR 60. Forix does not have any web developers on staff in the United States and, instead, uses developers employed by Web Saigon Vietnam for web and app development. CAR 60–61. Using an open-source tool called Magento, Web Saigon Vietnam's developers

develop, maintain, and improve on Forix's custom Magento modules. CAR 61–62. These Magento modules are directories containing files related to specific business features that can improve an e-commerce website by making them "more flexible, more user-friendly, and more memorable by adding unique features" for things like payment, shipping, and checkout. CAR 62.

Plaintiff Long has been employed as a senior developer by Web Saigon Vietnam since December 2017. Compl. ¶ 6; CAR 430. In this capacity, Plaintiff Long has gained knowledge of the "process and procedures involved in the partnership between Web Saigon . . . and Forix" and the "custom Magento modules developed by both Forix and Web Saigon Vietnam." CAR 64. Through this knowledge, Plaintiff Long can quickly troubleshoot and resolve issues with the custom Magento modules as well as develop and improve the custom modules. CAR 64. It took Plaintiff Long approximately one and a half years of training to gain this knowledge. CAR 66. Plaintiff Long's knowledge of Magento and the strategic partnership is also unique within Web Saigon Vietnam because he has travelled to the United States on multiple occasions to meet with Forix and "better understand the process and modules." CAR 65–66.

On September 9, 2020, Plaintiffs filed a L-1B petition on Plaintiff Long's behalf. The L-1B petition seeks to reclassify Plaintiff Long as an "intracompany transferee with specialized knowledge as a Senior Developer" through September 12, 2021. CAR 39–49.[1] The petition included, among other things, letters from executives at Web Saigon Vietnam and Plaintiff Web Saigon regarding the knowledge required by the senior developer position, examples of Plaintiff Long's work, pay stubs for Plaintiff Long, and Plaintiff Long's certifications and educational documents. CAR 56–59. Approximately one week later, Defendant USCIS issued a Request for

---

[1] The Certified Administrative Record ("CAR") was filed with the Court on March 19, 2021. ECF 26.

Evidence ("RFE") seeking additional information from Plaintiffs to determine Plaintiff Long's eligibility for the L-1B visa. CAR 517–25. The identified deficiencies in the petition included, among others: (1) whether the position in Vietnam involved specialized knowledge; (2) whether Plaintiff Long had the requisite specialized knowledge to perform the intended services in the United States; and (3) whether the position in the United States involves specialized knowledge. CAR 520–23. Three months later, on December 9, 2020, Plaintiffs responded to the RFE with additional evidence, including additional letters from executives and samples of the custom modules. CAR 535–609. On December 15, 2020, Defendant USCIS denied Plaintiffs' petition. It determined that Plaintiffs still had not demonstrated that the positions abroad and in the United States involved specialized knowledge for at least one year or that Plaintiff Long possessed that knowledge. CAR 6–16.

On January 15, 2021, Plaintiffs filed this case seeking review of Defendants' denial of the L-1B petition. Compl., ECF 1. On March 4, 2021, Plaintiffs sought a temporary restraining order and preliminary injunction to defer any adverse immigration consequences until the case is resolved. Pl. Mot. TRO, ECF 15. The Court denied Plaintiffs' motion. Min. Proceedings, ECF 22. In lieu of proceeding with a preliminary injunction, the parties filed cross motions for summary judgment.

**STANDARDS**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When a party seeks review under the APA, the district court 'sits as an appellate tribunal' and the 'entire case on review is a question of law.'" *Aguilar v. Neufeld*, 3:18-cv-01793-AC, 2020 WL 3351331, at

*3 (D. Or. Feb. 27, 2020) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).

Agency action "must be upheld on review unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (quoting 5 U.S.C. § 706(2)(A)). A decision is arbitrary and capricious if the agency does not "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation and internal quotation marks omitted).

While the court "may not supply a reasoned basis for the agency's action that the agency itself has not given . . . [it] will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974). "The agency's factual findings are reviewed for substantial evidence." *Family Inc. v. U.S. Citizenship & Immigration Servs.*, 469 F.3d 1313, 1315 (9th Cir. 2006). Agency action is presumed valid, *Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1084 (9th Cir. 2011), and courts "will not disturb the agency's findings under this deferential standard unless the evidence would compel a reasonable finder of fact to reach a contrary result." *Family Inc.*, 469 F.3d at 1315 (citation and internal quotation marks omitted).

**DISCUSSION**

Plaintiffs in this case challenge Defendants' denial of Plaintiffs' petition for an L-1B visa. Under the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.* (the "Act"), USCIS is permitted to promulgate regulations concerning the admission of nonimmigrant aliens. *See* 8

U.S.C. § 1184. One class of nonimmigrant alien is foreign nationals seeking temporary employment opportunities in the United States:

> an alien who, within 3 years preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or *involves specialized knowledge.*

*Id.* at § 1101(a)(15)(L) (emphasis added). Those seeking a visa on the basis of their employee's "specialized knowledge" are L-1B petitioners.

"Specialized knowledge" is defined in the Act as: "special knowledge of the company product and its application in international markets or . . . an advanced level of knowledge of processes and procedures of the company." 8 U.S.C. § 1184(c)(2)(B). USCIS regulations give limited additional guidance on what constitutes "specialized knowledge" because the implementing regulation "largely parrots, rather than interprets, the key statutory language." *Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.,* 769 F.3d 1127, 1136 (D.C.Cir. 2014). USCIS regulations interpret "specialized knowledge" as follows:

> Specialized knowledge means special knowledge possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets, or an advanced level of knowledge or expertise in the organization's processes and procedures.

8 C.F.R. § 214.2(l)(ii)(D). In addition to demonstrating one continuous year of employment with the petitioning entity during the prior three years, proof of specialized knowledge under the regulations requires the petitioner to show that the position abroad and in the United States involve specialized knowledge.[2] 8 C.F.R. § 214.2(l)(3)

---

[2] There are additional requirements for the L-1B classification in the case of affiliates and new businesses, but those issues are not currently in dispute.

In August 2015, USCIS issued a Policy Memorandum on L-1B Adjudications Policy. *See* PM-602-0111.[3] The memo specifically provides, among other things, guidance and clarification on how L-1B petitioners can demonstrate an employee possesses specialized knowledge. Looking to their dictionary definitions, USCIS distinguishes between special and advanced knowledge as follows:

- special knowledge, which is knowledge of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets that is distinct or uncommon in comparison to that generally found in the particular industry; or

- advanced knowledge, which is knowledge of or expertise in the petitioning organization's specific processes and procedures that is not commonly found in the relevant industry and is greatly developed or further along in progress, complexity and understanding than that generally found within the employer.

*Id.* at 7. Factors that may be considered in determining whether knowledge is specialized include: (1) whether the beneficiary's knowledge normally can be gained only through prior experience with the petitioning organization; (2) whether the knowledge can be easily transferred or taught to another individual without significant economic cost or inconvenience; and (3) whether the knowledge is of a process or product that is sophisticated or complex. *Id.* at 8. In evaluating claims of specialized knowledge, USCIS will look to—among other things— documentation of training, work experience, or education; evidence of impact the transfer would have on the petitioning organization's U.S. operations; in-house training records; and contracts, statements of work, or other documentation showing that the beneficiary possesses knowledge that is particularly beneficial to the organization's competitiveness in the marketplace. *Id.* at 12.

---

[3] The Policy memo can be found at https://www.uscis.gov/sites/default/files/document/memos/L-1B_Memorandum_8_14_15_draft_for_FINAL_4pmAPPROVED.pdf

The burden of proof of eligibility rests with the applicant. 8 U.S.C. § 1361. "Except where a different standard is specified by law, a petitioner or applicant in administrative immigration proceedings must prove by a preponderance of evidence that he or she is eligible for the benefit sought." *Matter of Chawathe,* 25 I. & N. Dec. 369, 375 (AAO 2010). Even if an officer has some doubt about a claim, the petitioner will have satisfied the standard of proof if they submit relevant, probative, and credible evidence, considered "individually and within the context of the totality of the evidence," that leads to the conclusion that the claim is "more likely than not" or "probably" true. *Id*. at 376.

Plaintiffs and Defendants both move for summary judgment. Plaintiffs' argument consists of two parts. First, Plaintiffs contend that Defendant USCIS "made many incorrect statements throughout the Denial," which had a significant impact on the ultimate decision. Pl. Mot. 1–2, 6. Second, Plaintiffs argue that Defendants "disregarded extensive and probative evidence" supporting the "specialized knowledge" component of the visa application. *Id.* at 2, 6. Defendants respond by arguing that Plaintiffs' argument regarding the factual inaccuracies in their decision is "nothing more than a semantic preference" and that the record supports their determination that Plaintiffs did not establish the "specialized knowledge" requirements of the statute and regulations. Def. Mot. 1, 17. The Court addresses each issue in turn.

I.  **Factual Misstatements**

Plaintiff first argues that the record "demonstrates that USCIS made serious factual errors throughout the decision that directly led to each of the three grounds of denial." Pl. Mot. 6. Specifically, Plaintiff contends that Defendant USCIS erred with regard to key facts about Plaintiff Web Saigon's business, including: (1) the specialized knowledge at issue, (2) its clients,
8 – OPINION & ORDER

and (3) its services. *Id.* at 8–10. Plaintiff argues that these factual errors "corrupt" Defendants' entire decision and demonstrate that the outcome of the petition was "preordained." *Id.* at 6.

First, Plaintiffs argue that Defendant USCIS "made a major error in stating what kind of specialized knowledge [is] involved in the position and held by Plaintiff Long." Pl. Mot. 8. Plaintiffs assert Defendants characterize Plaintiffs' L-1B petition as stating that Plaintiff Long's knowledge of Magento and his "knowledge and use of the client's internal processes, procedures, and methods of development" are "special." Pl. Mot. 9 (citing CAR 015). But that is not an accurate characterization of Defendants' decision. While Defendants advise Plaintiffs in their decision that the use of Magento is not "special" on its own, they also repeatedly state that Plaintiffs' claim of specialized knowledge involves the custom Magento modules created for and used in their partnership with Forix. *See* CAR 014–15. Further, Plaintiffs have not adequately explained why Defendants' statement that "[k]nowledge and use of the client's internal processes, procedures, and methods of development is not considered special or advanced" is erroneous, particularly in light of Plaintiffs' own statement in the petition that Plaintiff Long has specialized knowledge of the "process and procedures involved in the partnership between Web Saigon and our strategic partner Forix." CAR 015, 064. As Plaintiffs explain below, Forix is not Plaintiff Web Saigon's "client," and the knowledge that Plaintiffs appear to allege is special involves the processes and procedures involved in the *partnership* with Forix and not Forix's internal process. But, without more, this is a distinction without a difference. However phrased, both the decision and the petition refer to the processes and procedures involved in Plaintiffs' work with Forix.

Second, Plaintiffs argue that USCIS "repeatedly" mischaracterized the relationship between Plaintiffs and Forix in referring to Forix as the "client." Pl. Mot. 9–10. It does appear

from the decision that Defendants refer to Forix as Plaintiff Web Saigon's client rather than its strategic partner. *See, e.g.*, CAR 14–15. But again, Plaintiffs have not identified why this is a meaningful distinction under the applicable law. Whether the work was performed for Forix as a partner or as a client does not appear to effect whether Plaintiff Long's knowledge was "specialized."

Finally, Plaintiffs argue that Defendants misstate the nature of Plaintiff Web Saigon's services in referring to Magento as its "product." Pl. Mot. 10. Plaintiffs, however, do not demonstrate how this prejudiced Plaintiffs or "tainted" Defendants' analysis. Indeed, Defendants appear to refer to Magento as a product, not Plaintiff Web Saigon's product. *See* CAR 10, 15. And the decision repeatedly states that Plaintiffs use the "tool called 'Magento' . . . to customize, maintain, or develop the client's websites." CAR 010. Defendant's decision makes clear that they understood Magento was used by Plaintiff Web Saigon, not produced by them. Thus, Defendants' alleged factual misstatements do not render their decision arbitrary and capricious.

## II. Specialized Knowledge

Plaintiffs also contend that Defendants erred in "disregard[ing] extensive and probative evidence" supporting the "specialized knowledge" component of the visa application. Pl. Mot. 2, 6, 11. Plaintiffs rehash their arguments regarding the alleged factual errors that tainted Defendants' decision. *Id.* Plaintiffs also assert that the denial fails to address the "credible information provided in the letters that clearly explains why Plaintiff Long's knowledge is uncommon in the industry" and does not explain why other evidence was not adequately corroborating. *Id.* at 12. Plaintiffs finally argue that in each of the three findings on specialized knowledge Defendant USCIS "ignored its own policy by not giving weight to these statements involving the economic inconvenience and time sensitivity to the employer." *Id.* at 26.

As stated above, special knowledge is "knowledge of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets that is distinct or uncommon in comparison to that generally found in the particular industry." PM-602-0111 at 7. Evidence of specialized knowledge can include training, work experience, the impact that the transfer would have on the petitioning organization, and other documentation. *Id.* at 12. The petitioner must prove their eligibility by a preponderance of the evidence. *Matter of Chawathe*, 25 I. & N. Dec. at 375–76. In other words, "the evidence [must] demonstrate that the applicant's claim is 'probably true,' where the determination of 'truth' is made based on the factual circumstances of each individual case." *Id.* at 376. In evaluating these petitions, "the director must examine each piece of evidence for relevance, probative value, and credibility, both individually and within the context of the totality of the evidence, to determine whether the fact to be proven is probably true." *Id.*

In *Chain-Sys Corp. v. USCIS*, the Central District of California affirmed the decision of USCIS denying an L-1B visa.[4] Case No. 2:15-cv-01466, SVW-JC, 2016 WL 285037 (C.D. Cal. Jan. 12, 2016). There, the petitioner sought to transfer a senior project manager to the United States to assist with work on one of its software products. *Id.* at *1. The agency found that there was evidence that beneficiary was "competent in the use and application of [the petitioner's] tools, processes, procedures, and methodologies," but that the petitioner had not adequately "explained and evidenced how this proficiency equates to specialized knowledge" as "other

---

[4] The agency decision in *Chain-Sys* predated the 2015 Policy Memorandum applicable to this case. 2016 WL 285037, at *2 n.2. The guidance applicable to both cases, however, appears to be substantively similar. The 2015 Policy Memorandum superseded and rescinded prior memoranda, but the Memorandum also notes that guidance contained within the 2015 Policy Memorandum "is consistent with those policy memoranda," providing "consolidative and authoritative guidance" on the question of specialized knowledge in L-1B petitions. PM-602-0111 at 5.

workers in a similar position in the field" also perform these duties. *Id.* at *4. It further emphasized that there was no indication in the record that others in the field could not obtain this knowledge "in sufficient time so as to not cause a disruption or interruption of [petitioner's] business operations." *Id.* On reconsideration, the agency maintained its conclusion that the evidence did not show that the beneficiary's duties were sufficient to differentiate him from others in the industry. *Id.* at *5. The agency emphasized the lack of documentary evidence explaining and supporting the petitioner's statements in a letter that the beneficiary worked on "key components" of their software. *Id.* The agency also found that the petitioner failed to explain what part of the software required more than general information technology knowledge, and that the beneficiary's work on the software was not sufficient on its own to demonstrate specialized knowledge. *Id.*

The court determined that the agency's decision was not erroneous. The court recognized the evidence put forth by the petitioner, including the detailed bulleted points regarding the beneficiary's technical abilities, the evidence describing the unique niche occupied by the petitioning company and its product, declarations that the beneficiary had helped develop the software, and a statement that it would take three to four years of training and experience to "yield an expert such as the Beneficiary[.]" *Id.* at *5. But the court ultimately found "the fact that someone works with proprietary information or has a high level of technical skill are not sufficient findings to establish specialized knowledge." *Id*. It went on to conclude that "USCIS could have rationally concluded that the record did not reflect the extent of [the beneficiary's] involvement" in developing the software. *Id.* The court further found that the agency could have rationally found that evidence of the three or four years of training required to reach the same skill level as the beneficiary was overstated: "USCIS could have interpreted this to be the time

required for a recent college graduate to develop both the skills and knowledge to perform at the same level as [the beneficiary]" rather than the time required for someone else already in the industry. *Id.*

In this case, Defendants denied Plaintiffs' L-1B petition because Plaintiffs failed to establish that: (1) the position abroad involved specialized knowledge; (2) the proposed U.S. position involves specialized knowledge; and (3) Plaintiff Long has specialized knowledge. CAR 06–16. Defendants found that although the position required a certain level of skill with the Magento program, this knowledge was not sufficiently distinct or uncommon from that of others in the industry for purposes of L-1B classification. Defendants considered that the positions require knowledge of the custom modules used by Web Saigon and Forix for web development and website maintenance. CAR 10. The decision also referenced the other evidence Plaintiffs submitted, including screen shots showing Plaintiff Long's use of Magento in his role as a senior developer. CAR 10. Defendants, however, concluded that this evidence was insufficient to show that Plaintiff Long's duties were "uncommon in comparison to knowledge found generally in the website development or software development field." CAR 10. Defendants also emphasized that Magento is commonly used by other developers. CAR 10; *see also* CAR 12–13 (US Position), 14 (Beneficiary's Qualifications). Finally, the RFE and decision acknowledge that Plaintiff Long has gained his knowledge from years of hands-on experience. CAR 10, 14. But Defendant USCIS ultimately concluded that the evidence does not show how his knowledge of Magneto is special compared to others in his field. CAR 14.

Like the agency's decision in *Chain-Sys*, Defendants' decision was not arbitrary or capricious. Plaintiffs do not dispute that Magento—the tool used to create the custom modules at issue here—is an open-source program or that the use of Magneto alone is not specialized

knowledge. As both parties note, the alleged "specialized knowledge" is the knowledge of the custom modules created by Forix and Web Saigon and the procedures and processes related to their strategic partnership. But Plaintiffs' supporting information—as Defendants point out—does not demonstrate the specialized nature of this knowledge, i.e. that it is distinct or uncommon in the industry.

While Plaintiffs' petition and supporting letters describe the nature and purpose of the custom modules, the time that was required to develop the modules, and the work that Web Saigon developers are able to do in maintaining and developing the modules, their petition does not demonstrate how working with the custom modules requires knowledge that is distinct or uncommon in comparison to that generally found in the industry. *See* CAR 61–62, 65. Rather, these documents largely consist of conclusory statements that the knowledge is specialized without explanation. Plaintiff broadly asserts that this knowledge is special because the modules and the partnerships' processes and procedures are "specific and unique to the strategic partnership." CAR 64–65. A similar refrain is repeated in Plaintiffs' explanation of Plaintiff Long's duties, with nearly identical—and broad—descriptions of the specialized knowledge required for each particular task. *See* CAR 66 (for example, specialized knowledge includes "[k]nowledge of how to incorporate Forix LLC's custom modules"). These letters are relevant and probative. *See Matter of Chawathe*, 25 I. & N. Dec. at 376 (finding a letter from the president of the company was probative evidence as it was relevant, uncontroverted by any other evidence, and generally supported by other highly-probative documentary evidence). Without more, however, the letters show only that Plaintiff Long has a working knowledge of the use of Magento and not how or why his knowledge is specialized. Defendants reasonably concluded that Plaintiffs' conclusory statements that the building and maintenance of the companies'

custom modules is "specialized" does not show that Plaintiffs' knowledge is distinct or uncommon as compared to that generally found in the industry.

As Defendants emphasize in their decision, the documentary evidence provided also fails to bolster Plaintiffs' claim of specialized knowledge. As with the letters, the screenshots of Plaintiff Long working with clients to troubleshoot issues with the modules and the samples of the code itself do not demonstrate more than Plaintiff Long's ability to use Magento. Plaintiffs' letters do allege that at least a year and half of training was required to gain the requisite specialized knowledge to work with the custom modules. CAR 065–66. The letters also explain that a developer with fundamental Magento knowledge would "encounter bugs that they do not know how to resolve and he or she would need to spend a great deal of time debugging the code." CAR 544. According to Plaintiffs, without knowledge of how to use the custom modules, developers would "be much too inefficient" in working and maintaining the custom modules without sacrificing security, privacy, and functionality. CAR 545. Significant economic cost or inconvenience is a consideration when evaluating whether the knowledge is specialized. *See* PM-602-0111 at 8; *Fogo De Chao*, 769 F.3d at 1142–43 (finding that economic inconvenience should be considered by the agency). But as in *Chain-Sys*, Plaintiffs' description on this point is vague and lacks evidentiary support. *See Chain-Sys*, 2016 WL 285031, at *5. These statements do not show by a preponderance of the evidence that Plaintiff Long's knowledge is uncommon or distinct as compared to others in the industry. Thus, Defendants' decision denying Plaintiffs' L-1B petition was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

///

///

## CONCLUSION

The Court DENIES Plaintiffs' Motion for Summary Judgment [30] and GRANTS Defendants' Cross Motion for Summary Judgment [32].

IT IS SO ORDERED.

DATED: May 27, 2021.

_Marco Hernandez_
MARCO A. HERNÁNDEZ
United States District Judge